Michael F. Scanlon, Esq. (DC Bar #479777)
Michael.Scanlon@klgates.com
**K&L GATES LLP**
1601 K Street, N.W.
Washington, DC   20006
Telephone:     (202) 778-9000
Facsimile:     (202) 778-9100

J. Timothy Hobbs, Esq. (*pro hac vice* pending)
Tim.Hobbs@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA  98104
Telephone:     (206) 370-7664
Facsimile:     (206) 623-7022

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH GUINDON, 3414 Cemetery Rd Santa Fe, TX 77517 | No. |
| KATIE'S SEAFOOD MARKET, LLC. 1902 Wharf Rd. Galveston, TX 77550 | COMPLAINT FOR DECLARATORY AND  INJUNCTIVE RELIEF |
| WAYNE WERNER 16731 NW 173rd Terrace Alachua, FL 32615 | |
| DAVID KREBS 712 Planet Dr. Destin, FL 32541 | |
| ARIEL SEAFOODS OF FLORIDA, INC. 419 Mountain Dr. Destin, FL 32541 | |
| F/V DREAMCATCHER, INC. 509 Benning Dr. Destin, FL 32541 | |
| RUSSELL UNDERWOOD 607 Carolina Ave. Lynn Haven, FL 32444 | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 1

GLENHART BROOKS III
4082 W. Brooks Gang Ct.
Bradenton, FL 34280

JOHN ANDERSON
6707 N. Lagoon Dr.
Panama City, FL 32408

BUCCANEER FISH CO., INC.
6707 N. Lagoon Dr.
Panama City, FL 32408

JAMES M. CLEMENTS
604 Gulf Ave.
Carrabelle, FL 32322

BARTHOLOMEW NIQUET
401 Florida Ave.
Lynn Haven, FL 32444

CHRISTOPHER NIQUET
731 New York Ave.
Lynn Haven, FL 32444

WILLIAM COCHRANE
921 Marine Dr., Apt. 106
Galveston, TX 77550

JAMES M. WHITFIELD
1210 Georgia Ave.
Lynn Haven, FL 32444

LEWIS T. BESSINGER
654 Warsaw St.
Bayou Vista, TX 77563

BLUE DOLPHIN FISHING, INC.
654 Warsaw St.
Bayou Vista, TX 77563

LINDA BOVAIRD
654 Warsaw St.
Bayou Vista, TX 77563

WALKER FISHING FLEET, INC.
401 Diane Dr.
Andalusia, AL 36420

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 2

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

WILLIAM WRIGHT
921 Marine Dr., Apt. 101
Galveston, TX 77550

A&B SEAFOOD, INC.
8817 Stewart Rd. No. 56
Galveston, TX 77550

QUALITY AMERICAN SEAFOOD, LLC
7079 N. Holiday Dr.
Galveston, TX 77550

KENNETH GUINDON
7811 Larkspur Dr.
Texas City, TX 77591

MARTIN ARNOLD
213 Byrd Parker Drive
Wewahitchka, FL 32465

FISH FOR AMERICA, LLC
111 Gentian Road
Saint Augustine, FL 32086

GULF FISHERMEN'S ASSOCIATION, INC.
1336 Bayview Dr.
Clearwater, FL 33756

and

GULF OF MEXICO REEF FISH
SHAREHOLDER'S ALLIANCE
111 Gentian Road
Saint Augustine, FL 32086

                                    Plaintiffs,

        v.

PENNY SUE PRITZKER, in her official
capacity as Secretary of the United States
Department of Commerce
Office of the Secretary
Room 5858
14th St. and Constitution Ave., NW
Washington, DC 20230

NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION
Department of Commerce

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 3

Room 5128
14th St. and Constitution Ave., NW
Washington, DC 20230

and

NATIONAL MARINE FISHERIES
SERVICE
Department of Commerce
Room 14636
1315 East-West Highway
Silver Spring, MD 20910

Defendants.

## I.    INTRODUCTION

1.    This case is the result of Defendants' continuing mismanagement of the red snapper fishery in the Gulf of Mexico.  *See Guindon, et al. v. Pritzker*, Nos. 1:13-cv-988-BJR (D.D.C.) ("*Guindon I*") and 1:14-cv-45-BJR (D.D.C.) ("*Guindon II*").  Plaintiffs are commercial fishermen and women and their affiliated business entities and trade associations.  This Court previously held that Defendants' repeated failure to adopt meaningful accountability measures to ensure that the recreational sector of the fishery did not catch more fish than it had been allotted by its fishing quota harmed the commercial sector and violated numerous provisions of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA").  *See Guindon v. Pritzker*, 31 F. Supp. 3d 169 (D.D.C. 2014) (holding that Defendants violated 16 U.S.C. §§ 1883(d), 1851(a)(2), 1851(a)(4), 1853(a)(15), and 1854(b)(1)).

2.    Defendants promulgated some new accountability measures in response to the legal deficiencies the Court identified.  But even before the efficacy of these new measures could be assessed, Defendants pushed forward with a proposal to give the recreational sector an increased allocation.   Because the total allowable catch is limited, this "reallocation" will

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

penalize the Plaintiffs by taking away their fishing quota and giving it to the recreational sector of the fishery whose chronic overharvesting led to Plaintiffs' earlier challenges.

3.      Worse, even before soliciting public comments to formally consider and adopt this reallocation, Defendants have preemptively "frozen" a portion of the quota reserved to the commercial sector.  Defendants accomplished this regulatory short-cut by withholding part of Plaintiffs' quota scheduled to be released on January 1, 2016, so that the forthcoming reallocation, *if approved* sometime during 2016, could have retroactive application to January 1. In effect, Defendants jumped the gun and imposed the reallocation on Plaintiffs before that action could be duly promulgated in accordance with statutory requirements.

4.      The subject of this suit is Defendants' unlawful withholding of Plaintiffs' quota in anticipation, but prior to issuance, of a final rule to formally reallocate that quota to the recreational sector. The reallocation itself is also legally flawed in numerous other respects, including that it unfairly penalizes the commercial sector and rewards the recreational sector for overharvesting, and will jeopardize rebuilding of the overfished red snapper stock.   Once Defendants issue a final rule to formally reallocate the quota to the recreational sector, that rule will also be subject to legal challenge and Plaintiffs will seek to consolidate all of their claims against both actions.  The MSA's 30-day statute of limitations necessitated filing of this suit to preserve Plaintiffs' claims against all of Defendants' unlawful measures.

## II.      JURISDICTION AND VENUE

5.      This action arises under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. §§ 1801-1884; the Administrative Procedure Act

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 5

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

("APA"), 5 U.S.C. §§ 701-706, and the National Environmental Policy Act of 1969 as amended

("NEPA"), 43 U.S.C. §§ 4321 *et seq*.

6.      This Court has jurisdiction over this action pursuant to the MSA, which provides

that "[t]he district courts of the United States shall have exclusive jurisdiction over any case or

controversy arising under" the MSA. 16 U.S.C. § 1861(d). The MSA also provides that

regulations promulgated by NMFS, and actions taken by NMFS under regulations implementing

a fishery management plan ("FMP"), shall be subject to judicial review "if a petition for such

review is filed within 30 days after the date on which the regulations are promulgated or the

action is published in the Federal Register, as applicable." 16 U.S.C. § 1855(f).  The Plaintiffs

are challenging a final rule published in the Federal Register on Friday, November 27, 2015, that

withholds 4.9 percent (352,000 pounds) of the commercial sector's red snapper quota in order to

reallocate that quota to the recreational sector through a future rule.  *See* 80 Fed. Reg. 73999

(Nov. 27, 2015) (the "Final Rule").  Plaintiffs filed this Complaint within thirty (30) days after

publication in the Federal Register of the Final Rule in accordance with 16 U.S.C. § 1855(f) and

Fed. R. Civ. P. 6(a)(1)(C).  The Final Rule is an agency action that is capable of repetition but

evading review.

7.      This Court further has jurisdiction over this action pursuant to the APA, which

provides that final agency action for which there is no other adequate remedy in a court is subject

to judicial review.  5 U.S.C. §§ 701-706.

8.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(federal question jurisdiction), which grants the district courts "original jurisdiction of all civil

actions arising under the . . . laws . . . of the United States," and 28 U.S.C. § 1361, which grants

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

9.      This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and may grant relief pursuant to the MSA, 16 U.S.C. §§ 1861(d) and 1855(f), as well as the APA, 5 U.S.C. § 706.

10.     Venue is properly vested in this judicial district under 28 U.S.C. § 1391(b) and (e), because the defendants are officers or employees of the United States and are located in this district and because a substantial part of the events and omissions which gave rise to this action occurred in this district.

11.     This case is related to Case Nos. 1:13-cv-988 and 1:14-cv-45 under LCvR 40.5(a)(4) because it involves the same parties and relates to the same subject matter. Specifically, all of the named plaintiffs and defendants in this action were also named plaintiffs and defendants in the prior two cases.  Like the prior two cases, this action involves Defendants' continuing mismanagement of the red snapper fishery in the Gulf of Mexico that harms all stakeholders and jeopardizes the rebuilding of the red snapper stock.  Accordingly, this case involves issues of fact in common with the prior two cases.

### III.     PARTIES

12.     Plaintiff Keith Guindon ("Guindon") is a commercial fisherman residing in Santa Fe, Texas.  Guindon holds Individual Fishing Quota ("IFQ") shares for Gulf of Mexico red snapper ("red snapper").  Guindon owns and operates the fishing vessels Falcon, Katie Marie,

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

Avenger, Voyager, and Kathleen M.  Guindon also fishes recreationally for red snapper in the Gulf of Mexico.

13.     Plaintiff Katie's Seafood Market, LLC ("Katie's Seafood") is a limited liability company organized under the laws of the State of Texas and located in Galveston, Texas. Katie's Seafood is a commercial fish and seafood market.  Plaintiff Guindon is the owner and president of Katie's Seafood.

14.     Plaintiff Wayne Werner ("Werner") is a commercial fisherman residing in Alachua, Florida.  Werner holds IFQ shares for red snapper.  Werner owns and operates the fishing vessel Sea Quest.

15.     Plaintiff David Krebs ("Krebs") is a commercial fisherman residing in Destin, Florida.  Krebs holds IFQ shares for red snapper.  Krebs owns and operates the fishing vessel Wanda.

16.     Plaintiff Ariel Seafoods of Florida, Inc. ("Ariel Seafoods") is a corporation organized under the laws of the State of Florida and located in Destin, Florida.  Ariel Seafood is a commercial fish and seafood business.  Plaintiff Krebs is the owner and president of Ariel Seafoods.

17.     Plaintiff F/V Dreamcatcher, Inc. ("Dreamcatcher") is a corporation organized under the laws of the State of Florida and located in Destin, Florida.  Dreamcatcher holds IFQ shares for red snapper.  Dreamcatcher owns and operates the fishing vessel Nan Baldwin. Plaintiff Krebs is the owner and president of Dreamcatcher.

18.     Plaintiff Russell Underwood ("Underwood") is a commercial fisherman residing in Lynn Haven, Florida.  Underwood holds IFQ shares for red snapper.  Underwood owns and

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

operates the fishing vessels Last Time, Connie Marie, Malcolm B., Laura Ann, Char-Ma-Ann, Norman B., and Carolina Princess.

19.     Plaintiff Glenhart Brooks III ("Brooks") is a commercial fisherman residing in Bradenton, Florida.  Brooks holds IFQ Shares for red snapper.  Brooks owns and operates the fishing vessels Miss Gail, Miss Donna, and Neptune I.

20.     Plaintiff John Anderson ("John") is a commercial fisherman residing in Panama City, Florida.  John holds IFQ shares for red snapper.  John owns and operates the fishing vessel Pisces.

21.     Plaintiff Buccaneer Fish Company, Inc. ("Buccaneer Fish") is a corporation organized under the laws of the State of Florida and located in Panama City, Florida.  Buccaneer Fish is a commercial fish and seafood business.  Plaintiff John is the owner and president of Buccaneer Fish.

22.     Plaintiff James M. Clements ("Clements") is a commercial fisherman residing in Carrabelle, Florida.  Clements is the owner and president of Captain Jim's Charters, Inc., which holds IFQ shares for red snapper.

23.     Plaintiff Bartholomew Niquet ("B. Niquet") is a commercial fisherman residing in Lynn Haven, Florida.  B. Niquet holds IFQ shares for red snapper.  B. Niquet owns and operates the fishing vessel Galilean and operates the fishing vessel Nina.

24.     Plaintiff Christopher Niquet ("C. Niquet") is a commercial fisherman residing in Lynn Haven, Florida.  C. Niquet leases annual IFQ allocation to engage in the commercial red snapper fishery in the Gulf of Mexico and operates the fishing vessel Nina.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

25.     Plaintiff William Cochrane ("Cochrane") is a commercial fisherman residing in Galveston, Texas.  Cochrane holds IFQ shares for red snapper.  Cochrane owns and operates the fishing vessel Chelsea Ann.

26.     Plaintiff James M. Whitfield ("Whitfield") is a commercial fisherman residing in Lynn Haven, Florida.  Whitfield owns IFQ shares for red snapper.

27.     Plaintiff Lewis T. Bessinger ("Bessinger") is a commercial fisherman residing in Bayou Vista, Texas.  Bessinger operates the fishing vessel Ironsides.

28.     Plaintiff Linda Bovaird ("Bovaird") is the owner and sole shareholder of Blue Dolphin Fishing, Inc. and resides in Bayou Vista, Texas.

29.     Plaintiff Blue Dolphin Fishing, Inc. ("Blue Dolphin") is a corporation organized under the laws of the State of Florida and located in Bayou Vista, Texas.  Blue Dolphin holds IFQ shares for red snapper.  Blue Dolphin is a commercial fishing business that owns and operates the fishing vessel Ironsides.  Plaintiff Bovaird is the corporate secretary and treasurer of Blue Dolphin and Plaintiff Bessinger is the president of Blue Dolphin.

30.     Plaintiff Walker Fishing Fleet, Inc. ("Walker Fishing") is a corporation organized under the laws of the State of Florida with its principal place of business in Niceville, Florida.  Walker Fishing is a commercial fishing business that owns and operates the fishing vessel June Sue.  Walker Fishing holds IFQ shares for red snapper.

31.     Plaintiff William Wright ("Wright") is a commercial fisherman residing in Galveston, Texas.  Wright holds IFQ shares for red snapper.

32.     Plaintiff A&B Seafood, Inc. ("A&B Seafood") is a corporation organized under the laws of the State of Texas and located in Galveston, Texas.  A&B Seafood is a commercial

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

fishing business which holds IFQ shares for red snapper. A&B Seafood owns the fishing vessel Alice Mae. Plaintiff Wright is the owner and president of A&B Seafood.

33.     Plaintiff Quality American Seafood, LLC ("Quality American") is a limited liability company organized under the laws of the State of Texas and located in Galveston, Texas. Quality American is a commercial fishing business. Plaintiff Wright is an owner and member of Quality American.

34.     Plaintiff Kenneth Guindon ("Kenneth") is a commercial fisherman residing in Texas City, Texas. Kenneth leases annual IFQ allocation to engage in the commercial red snapper fishery.

35.     Plaintiff Martin Arnold ("Arnold") is a commercial fisherman residing in Wewahitchka, Florida. Arnold owns and operates the fishing vessels Sea Breeze, Sir Martin E, Wolf, K.D.S., Bout Time and Wayward Wind. Arnold is the owner of Fishing Vessel Bouttime, LLC and Seminole Wind Fishing, Inc., which holds IFQ shares for red snapper and owns the fishing vessel Seminole Wind.

36.     Plaintiff Fish for America, LLC ("Fish for America") is a limited liability corporation organized under the laws of the State of Florida and located in St. Augustine, Florida. Fish for America advocates on behalf of commercial fishermen in the Gulf of Mexico and seafood consumers nationwide.

37.     Plaintiff Gulf Fishermen's Association, Inc. ("GFA") is a nonprofit corporation organized under the laws of the State of Florida and located in Clearwater, Florida. GFA represents offshore fishermen in the southeastern United States.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

38.     Plaintiff Gulf of Mexico Reef Fish Shareholders' Alliance ("GMRFSA") is a nonprofit corporation organized under the laws of the State of Texas and located in Galveston, Texas.   GMRFSA is a trade organization representing commercial fishermen in the Gulf of Mexico.

39.     Defendant Penny Sue Pritzker is the Secretary of the U.S. Department of Commerce.   She is sued in her official capacity as the Secretary of Commerce and as the chief officer of the National Oceanic and Atmospheric Administration.

40.     Defendant National Oceanic and Atmospheric Administration ("NOAA") is an agency of the U.S. Department of Commerce with supervisory responsibility for the National Marine Fisheries Service.   The Secretary of Commerce has delegated responsibility for managing U.S. marine fisheries to NOAA, which in turn has further delegated that responsibility to the National Marine Fisheries Service.

41.     Defendant National Marine Fisheries Service ("NMFS") is an agency of the U.S. Department of Commerce that has been delegated the primary responsibility to manage United States marine fisheries through its approval of fishery plans, plan amendments, and regulations implementing those plans and plan amendments.   This lawsuit concerns actions of NMFS's Southeast Regional Office.

## IV.   FACTUAL BACKGROUND

### A.  Statutory Framework

42.     The MSA governs the management of marine fisheries in the U.S. Exclusive Economic Zone ("federal waters").   Under the MSA, the country is divided into eight regions, with each region having a regional fishery management council that is charged with managing

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

the marine fisheries in its respective jurisdiction.  *See* 16 U.S.C. § 1852.  The Secretary of Commerce ("Secretary") appoints most members of the regional councils from among lists of nominees submitted by the governors of coastal states.  *Id*. § 1852(b)(2)(C).  The Secretary must ensure a fair and balanced apportionment among competing interests.  *Id*. § 1852(b)(2)(B). Membership on the regional councils also includes officials of state and federal agencies with authority to manage fisheries who serve *ex officio*.  *Id*. § 1852(b)(1).

43.    The regional fishery management councils develop measures to manage stocks of fish under their respective jurisdictions and propose those management measures to the Secretary.  *Id*. § 1852(h).  The Secretary, acting through NOAA and its subagency, NMFS, must approve the proposed measures if consistent with the MSA and other laws and, where appropriate, promulgate the necessary federal regulations.  *Id*. § 1854.

44.    The numerous species of reef fish in the Gulf of Mexico are managed as a complex by the Gulf of Mexico Fishery Management Council ("Gulf Council").  16 U.S.C. § 1802(a)(1)(E); *see also* 50 C.F.R. § 622, Appendix A, Table 3 (listing Gulf of Mexico reef fish species).  The Gulf Council originally implemented a fishery management plan for reef fish (the "Reef Fish FMP") in 1981.  The Reef Fish FMP has been amended several times.  The Reef Fish FMP as amended and all implementing regulations were developed and approved under the authority of the MSA and must comply with the MSA's provisions.

## B.  Management of Red Snapper in the Gulf of Mexico

45.    Gulf of Mexico red snapper are managed under the Reef Fish FMP.  The Reef Fish FMP and its implementing regulations establish measures to regulate commercial and recreational fishing activities that target red snapper.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

46.     Amendment 1 to the Reef Fish FMP, implemented in 1990, allocated 51 percent of the annual catch of red snapper to the commercial sector and 49 percent to the recreational sector.  That 51/49 percent allocation remained in effect as of the effective date of the Final Rule.

47.     NMFS designated red snapper as overfished in 1988.   A stock of fish is considered overfished when its biomass has declined below a level that jeopardizes the capacity of the stock to produce the maximum sustainable yield ("MSY") on a continuing basis.  *See* 16 U.S.C. § 1802(34); 50 C.F.R. § 600.310(e)(2)(i)(E).

48.     In 2004, the Gulf Council approved Amendment 22 to the Reef Fish FMP, which established a rebuilding plan for red snapper that was projected to end overfishing by 2010 and to rebuild the stock by 2032.

49.     In 2012 NMFS determined that the red snapper stock was no longer subject to overfishing.  Overfishing occurs when a stock of fish is subject to a level of fishing mortality or annual catch that jeopardizes the capacity of the stock or stock complex to produce MSY on a continuing basis.  *See* 50 C.F.R. § 600.310(e)(2)(i)(B).  Although overfishing of the red snapper stock has ended and the stock is rebuilding, NMFS still considers the stock to be overfished and projects it will not be fully rebuilt until 2032 pursuant to the rebuilding plan implemented in 2004.

50.     In order to prevent overfishing and achieve rebuilding as required by the MSA, the Gulf Council develops, and NMFS approves, annual catch limits ("ACLs") for the red snapper fishery.  *See* 16 U.S.C. § 1853(a)(15) (FMPs shall "establish a mechanism for specifying annual catch limits").  NMFS has established sector ACLs for the commercial and recreational sectors of the red snapper fishery.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

51.     Furthermore, section 407(d)(1) of the MSA, 16 U.S.C. § 1883(d)(1), provides that "any fishery management plan, plan amendment, or regulation submitted by the Gulf Council for the red snapper fishery…shall contain conservation and management measures that…establish separate quotas for recreational fishing…and commercial fishing that, when reached, result in a prohibition on the retention of fish caught during recreational and commercial fishing, respectively, for the remainder of the fishing year." Section 407(d)(2) of the MSA, 16 U.S.C. § 1883(d)(2), provides that these conservation and management measures must "ensure that such quotas reflect allocations among such sectors and do not reflect any harvests in excess of such allocations." For red snapper in the Gulf of Mexico, NMFS has determined that the commercial and recreational quotas required by § 1883(d) are the commercial and recreational sector ACLs.

**C.  The Prior *Guindon* Litigation**

52.     For many years, NMFS failed to implement sufficient measures to constrain catches by the recreational sector to that sector's quota. As a result, the recreational sector routinely exceeded its quota by significant amounts. Specifically, between 2007 and 2013, the recreational sector exceeded its quota every year by 66 to 128 percent (except for 2010, when the Deepwater Horizon incident closed much of the Gulf to fishing). By contrast, over this same period of time, the commercial sector complied with its quota every year.

53.     Frustrated with NMFS's continuing failure to hold the recreational sector accountable to its quota, Plaintiffs filed suit in 2013 and 2014 asserting that NMFS's actions violated several provisions of the MSA and other laws. This Court ruled for Plaintiffs on all of their MSA claims. *See Guindon*, 31 F. Supp. 3d at 192-201.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

54.     First, the Court held that NMFS violated section 407(d) of the MSA, 16 U.S.C.

§1883(d), by repeatedly failing to prohibit the retention of fish after the recreational sector

exceeded its quota.  *See Guindon*, 31 F. Supp. 3d at 193 ("At a certain point NMFS was

obligated to acknowledge that its strategy of incrementally shortening the season was not

working.  Administrative discretion is not a license to engage in Einstein's definition of folly--

doing the same thing over and over again and expecting a different result.  Section 407(d)

required NMFS to implement management measures with a fighting chance of 'resulting in a

prohibition on the retention of fish'--be that a buffer, a dramatically shortened season, or some

other strategy.") (quoting 16 U.S.C. § 1883(d)).

55.     Second, because of uncertainty as to whether management measures could

sufficiently constrain the recreational sector's catch, the court also held that NMFS failed to

impose sufficient accountability measures as required by section 303(a)(15), 16 U.S.C.

1853(a)(15).  *Guindon*, 31 F. Supp. 3d at 199-200 ("The single accountability measure included

in the FMP, in-season closure, has done very little to prevent quota overages.").

56.     Third, by permitting the recreational sector to routinely exceed its quota, NMFS

effectuated a "de facto reallocation" from the commercial sector to the recreational sector in

violation of the FMP's 51/49 percent allocation and MSA requirements that an allocation must

"promote conservation."  *Id*. at 200-01 ("NMFS essentially guaranteed that the actual catch

allocation would skew widely from the 51/49 allocation, as indeed it did. This violated MSA

Section 304(b).… When an agency blinds itself to the high likelihood that its actions will cause

overharvesting, the Court cannot characterize those actions as 'reasonably calculated to promote

conservation.'") (citing 16 U.S.C. §§ 1854(b), 1853(a)(4)).

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

57.     The Court also held that NMFS's decision to disregard new recreational landings estimates showing that the recreational sector had exceeded its quota in order to authorize additional recreational fishing during an October season violated NMFS's obligation to use the best available science.   *See Guindon*, 31 F. Supp. 3d at 195 ("NMFS's dismissal of the 2013 MRIP landings estimates also violated National Standard 2, which requires NMFS to base all conservation and management measures on the 'best scientific information available.'") (quoting 16 U.S.C. § 1851(a)(2)).

**D. Actions Taken on Remand**

58.     After the Court's ruling in *Guindon I*, the parties agreed to stay *Guindon II* so that NMFS could "reconsider the accountability measures governing the recreational red snapper fishery contained in the [Reef Fish FMP]" and "take appropriate action consistent with the Court's opinion in *Guindon I*."  Dkt. # 24, No. 1:15-cv-45 (D.D.C. April 10, 2014).

59.     On remand, the Gulf Council proposed and Defendants approved a 20 percent catch buffer and a requirement that the recreational sector pay back any overages in the subsequent year.  This was first accomplished by an emergency rule for 2014, and then through a framework amendment to the Reef Fish FMP that applies to 2015 and beyond.

60.     NMFS initially urged the Gulf Council to implement these accountability measures through Amendment 28 to the Reef Fish FMP, an amendment under consideration to change the 51/49 percent quota allocation between the commercial and recreational sectors that had been in place since 1990.  On April 14, 2014, at the first Gulf Council meeting after the Court's decision in *Guindon I*, Dr. Roy Crabtree, the NMFS Southeast Regional Administrator, explained to the Reef Fish Committee that "long term, we're going to have to put some

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 17

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

permanent revised accountability measures in place" and that "it seems to me a logical place to put that might be to add some actions to Amendment 28." All of the action alternatives in Amendment 28 would have reallocated more quota to the recreational sector from the commercial sector. Thus, from the start of the remand proceedings, NMFS urged the Gulf Council to rectify the unlawful "de facto reallocation" that had occurred in prior years -- where NMFS "essentially guaranteed that the actual catch allocation would skew widely from the 51/49 allocation," *Guindon*, 31 F. Supp. 3d at 200 -- by further penalizing the commercial sector through a formal reallocation of its quota to the recreational sector.

## E. Amendment 28 to the Reef Fish FMP (Reallocation)

61.     NMFS's proposal to combine the accountability measures required by this Court's decision in *Guindon I* with a reallocation of quota to the recreational sector foundered when Plaintiffs and other stakeholders succeeded in disproving the economic theory advanced by NMFS economists to support the reallocation.  Specifically, Amendment 28 was initially premised on the theory that a purported increase in "net economic benefits" would result from reallocating more quota to the recreational sector.  That theory was heavily criticized because, among other reasons, any purported gains in net benefits could not be assured because the allocation of quota within the recreational sector itself was not economically efficient. Amendment 28 now acknowledges that "inferences about economic efficiency are erroneous when each sector's quota is not efficiently allocated within the sector" and that "policy prescriptions based on such inferences would not be valid."   The Gulf Council elected to implement accountability measures for the recreational sector through a separate framework amendment and not to combine those measures with a quota reallocation.

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

62.     Unfortunately, reallocation under Amendment 28 did not go away even after Plaintiffs and other stakeholders discredited the economic theory supporting it.   Instead, at NMFS's urging, the Gulf Council radically changed the "purpose and need" for Amendment 28 away from improving economics to ensuring a "fair and equitable" allocation between the sectors.   The Gulf Council and NMFS, however, never reconsidered the management alternatives to ensure consistency with Amendment 28's revised purpose and need.   All of the action alternatives continued to reallocate more quota to the recreational sector without any consideration of reallocating more quota to the commercial sector.   Thus, despite a seven year period where the commercial sector complied with its quota in the face of massive overharvesting by the recreational sector every year, the Gulf Council and NMFS implicitly concluded that the only possible "fair and equitable" allocation was one that penalized the commercial sector by taking away its quota and giving it to the recreational sector.

63.     The Gulf Council selected Alternative 8 in Amendment 28 as its Preferred Alternative.   Alternative 8 proposed to reallocate that portion of a recent catch limit increase attributable to NMFS's "recalibration" of recreational landings estimates, which purported to show that the recreational sector had exceeded its quotas by even greater amounts than previously estimated.   These revised landings estimates (based on only one year's worth of observations) suggested that the red snapper stock was more productive than previously determined and could sustain higher catch limits.   Thus, under Alternative 8, the recreational sector would obtain 100 percent of the benefit of this newfound stock productivity notwithstanding the 51/49 percent allocation set in 1990 based on the sectors' historical landings. The recreational sector thus benefitted from NMFS's conclusion that the sector had exceeded its

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

annual quotas by even greater margins.   The methodology NMFS used to "recalibrate" recreational landings estimates was not fully disclosed to the Gulf Council prior to its decision to increase the overall catch limit or approve Amendment 28, and is still not publicly available.

64.     The Gulf Council voted on August 13, 2015 to submit Amendment 28 to NMFS for approval, selecting Alternative 8 which would increase the recreational sector's allocation from 49 percent to 51.5 percent and decrease the commercial sector's allocation from 51 percent to 48.5 percent.   Dr. Crabtree, the NMFS Regional Administrator who serves *ex officio* on the Gulf Council, voted in favor of reallocation.   The Gulf Council formally transmitted Amendment 28 to NMFS for approval on September 30, 2015.

65.     Members of the Gulf Council who voted against Amendment 28 subsequently submitted a Minority Report in which they urged NMFS to disapprove Amendment 28 pursuant to 16 U.S.C. § 1854(a)(3).   The Minority Report asserts that Amendment 28 violates numerous MSA and NEPA requirements, including that it will not promote conservation, is not fair and equitable, wrongly establishes a quota for the recreational sector that reflects that sector's overharvesting, was wrongly adopted by the Gulf Council prior to critical new information being made available to the public, and fails to consider a reasonable range of alternatives.

66.     On the date of publication of the Final Rule, NMFS had not initiated an evaluation of Amendment 28 to determine whether it is consistent with the fishery management plan and applicable law as required by 16 U.S.C. § 1854(b)(1), nor had NMFS published the notice of availability of Amendment 28 for public comment as required by 16 U.S.C. § 1854(a)(1)(B).

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

**F. The Framework Action to Preemptively Withhold the Commercial Sector's Quota in Anticipation of NMFS's Approval of Amendment 28.**

67.     Also at NMFS's urging, the Gulf Council adopted a "framework action" to preemptively withhold 4.9 percent of the commercial sector's quota scheduled for release on January 1, 2016, so that Amendment 28, if approved, can take effect in time for the start of the recreational fishing seasons on June 1, 2016.   The framework action explains that the "timeline for Amendment 28 does not allow NMFS to implement the proposed redistribution of red snapper commercial quota until after…January 1, 2016," and that this "framework action will provide the [NMFS] Regional Administrator the authority to withhold 4.9 percent of the 2016 red snapper commercial quota (352,000 pounds whole weight) in anticipation of the implementation of Amendment 28."   The stated purpose of the framework action is to "ensure that the allocations established through Amendment 28 and implemented in 2016 are effective in the 2016 fishing year."   NMFS approved the framework action through the Final Rule on November 27, 2015.

68.     Through the Final Rule, NMFS preemptively imposed Amendment 28 upon the commercial sector prior to NMFS duly promulgating that amendment in accordance with statutory requirements so that, once approved, Amendment 28 could have retroactive application to January 1, 2016.   NMFS has authority to take emergency, short-term actions under certain circumstances, but did not invoke that authority or meet the requirements for its exercise in promulgating the Final Rule.

69.     Although the Final Rule contemplates that the withheld portion of the commercial quota would be released back to the commercial sector in the event that NMFS disapproves Amendment 28, the commercial sector and the fishery itself would still suffer harm.  Indefinitely

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 21

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

withholding 4.9 percent of the quota at the outset of the season disrupts business planning. Participants who choose to fish or lease all their quota early in the year are prevented from doing so.  The amount of red snapper quota commercial participants allocate to a quota bank to cover red snapper bycatch in the grouper fishery may be reduced, leading to increases in dead discards. Moreover, the framework action suggests that any quota released back to the commercial sector could occur later in the year, which could cause a market glut, depress dockside fish prices, and risk stranding quota that cannot be utilized prior to the end of the year.  The Final Rule has adverse impacts on the commercial sector whether or not NMFS approves Amendment 28.

## V.       FIRST CAUSE OF ACTION – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

70.     Paragraphs 1 through 69 are hereby incorporated by reference.

71.     In promulgating the Final Rule, NMFS acted arbitrarily and capriciously and in violation of law, and thus violated the APA.

72.     NMFS violated the APA by effectively imposing Amendment 28 on the commercial sector through the Final Rule prior to NMFS's review and promulgation of Amendment 28 in accordance with statutory requirements.  NMFS failed to adhere to statutory deadlines in promulgating Amendment 28 or to invoke its emergency regulation authority, and promulgated the Final Rule instead to preemptively impose Amendment 28 on the commercial sector.

73.     The framework action promulgated by the Final Rule is arbitrarily justified on the basis of Amendment 28, which it incorporates by reference even though Amendment 28 has not been approved or implemented by NMFS.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 22

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

74.     The Final Rule violates several provisions of the MSA and undermines the objectives of the Reef Fish FMP.  By indefinitely withholding a portion of the commercial sector's quota for 2016, NMFS jeopardizes achievement of optimum yield as required by 16 U.S.C. § 1851(a)(1), fails to minimize costs as required by 16 U.S.C. § 1851(a)(7), imposes inefficiencies on the commercial sector that prior amendments to the Reef Fish FMP sought to eliminate, and undermines the FMP's objectives to reduce dead discards.

75.     The Final Rule violates the APA.

## VI.     SECOND CAUSE OF ACTION – VIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT

76.     Paragraphs 1 through 75 are hereby incorporated by reference.

77.     NEPA requires that a federal agency assess the environmental consequences of its actions, including evaluating a reasonable suite of alternatives and collecting and analyzing information as appropriate.  *See* 42 U.S.C. § 4332.

78.     NMFS prepared an Environmental Assessment concerning the Final Rule at issue in this case that does not comply with the standards established in NEPA and implementing regulations and fails to take a hard look at the environmental consequences of the Final Rule.

79.     The Final Rule violates NEPA.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.     Enter a declaratory judgment that the Final Rule is arbitrary, capricious and in violation of the Magnuson-Stevens Fishery Conservation and Management Act, the Administrative Procedure Act, and NEPA;

2.     Vacate the Final Rule;

K&L GATES LLP
1601 K STREET, N.W
WASHINGTON, DC 20006
TELEPHONE: (202) 778-9000
FACSIMILE: (202) 778-9100

3.      Permit Plaintiffs to amend or supplement this Complaint to assert claims against

Amendment 28 once approved by NMFS (all of which claims Plaintiffs expressly

reserve), and to then expedite this case pursuant to 16 U.S.C. § 1855(f)(4).

4.      Award Plaintiffs their fees, expenses, and costs pursuant to Equal Access to

Justice Act, 28 U.S.C. § 2412(d); and

5.      Such other and further relief as this Court deems just and appropriate.

DATED this 28th day of December, 2015.

K&L GATES LLP


By:   ___/s Michael F. Scanlon_____
        Michael F. Scanlon (DC Bar # 479777)
        Michael.Scanlon@klgates.com
        1601 K Street, NW
        Washington, DC 20006
        Telephone: (202) 661-3764
        Facsimile: (202) 778-9100

        J. Timothy Hobbs (*pro hac vice* pending)
        Tim.Hobbs@klgates.com
        925 Fourth Avenue, Suite 2900
        Seattle, WA  98104
        Telephone:     (206) 623-7580
        Facsimile:      (206) 623-7022

        Attorneys for Plaintiffs